**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-22359-BLOOM/Elfenbein**

FRANTZ JEANNITON,

     Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

     Defendant.

_____/

**ORDER ON MOTION TO DISMISS**

     **THIS CAUSE** is before the Court upon Defendant Costco Wholesale Corporation's ("Defendant") of Trustees' Motion to Dismiss ("Motion"), ECF No. [9]. Plaintiff Frantz Jeanniton ("Plaintiff") filed a Response in Opposition, ECF No. [12], to which Defendant filed a Reply, ECF No. [13]. The Court has carefully reviewed the Motion, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted in part and denied in part.

**I.    BACKGROUND**

     As alleged in his Complaint, Plaintiff, a Haitian male, was employed by Defendant as a Food Court Assistant, beginning in October 2022. ECF No. [1-2] ¶¶ 8, 9. On April 18, 2024, Plaintiff punched in at 5:00 p.m. and punched out at 10:00 p.m. after closing. *Id.* ¶ 10. Plaintiff purchased a pizza and had a receipt proving the purchase. *Id.*

     However, on April 19, 2024, Plaintiff was accused of stealing the pizza he had purchased. *Id.* ¶ 11. That day, managers Eddie Mairona and Perqui de Leon summoned Plaintiff to the office and accused him of theft. *Id.* ¶ 12. Plaintiff was instructed to write a statement and told an investigation would be conducted. *Id.* Notwithstanding this, a few hours later, Eddie Mairona told

Plaintiff, "This is your last day," without providing legitimate explanation or investigative findings. *Id.* ¶ 13. Plaintiff was given a termination document to sign and was immediately terminated. *Id.* ¶ 14.

When Plaintiff requested that Human Resources review the accusation, Defendant refused and immediately demanded Plaintiff's hat and badge. *Id.* ¶ 15. Defendant did not interview witnesses or review objective evidence, including Plaintiff's receipt, before accusing him of theft. *Id.* ¶ 16. At the time of his termination, Plaintiff had applied for a supervisor position and was more proficient at his job than non-Haitian employees. *Id.* ¶ 18. He "consistently performed his job in a satisfactory and above satisfactory manner." *Id.* ¶ 28.

More generally, Plaintiff's supervisor, Cesar Castillo, who is Hispanic, demonstrated preferential treatment of Hispanic employees and assigned Plaintiff tasks, including sweeping both inside and outside, that were not required of similarly situated non-Haitian coworkers. *Id.* ¶ 19. Such similarly situated non-Haitian coworkers include Juan Gomez (Food Court Assistant), Yuni Sabate (Food Court Assistant), Quinisha LNU (Supervisor), Giraldo Pedro (Food Court Assistant), and Marlyn Lubin (Manager). *Id.* ¶ 20. These individuals were not subjected to the same scrutiny, discipline, or termination under comparable circumstances. *Id.*

Juan Gomez took photographs of Plaintiff when he reported to work and stated he was instructed to do so by a supervisor. *Id.* ¶ 21. Plaintiff reported this conduct to manager Marlyn Lubin approximately one week before his termination. *Id.* Similarly, Plaintiff complained about discrimination around April 10, 2024, approximately one week before his termination. *Id.* ¶ 22. After doing so, Plaintiff "was subjected to stricter scrutiny, hostile treatment, unwarranted negative feedback, and discipline." *Id.* ¶ 23. Plaintiff's Haitian coworker, Danna, witnessed the hostile work environment. *Id.* ¶ 24.

Defendant applied disciplinary and promotional policies inconsistently in favor of non-Haitian employees. *Id.* ¶ 25. Employees of Plaintiff's national origin were subjected to stricter scrutiny than white and/or different national origin coworkers. *Id.* ¶ 26.

As a result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, reputational harm, and other damages. *Id.* ¶ 30.

In April 2025, Plaintiff filed suit against Defendant in state court, alleging three counts of violations of the Florida Civil Rights Act. ECF No. [1-4]. In September 2025, after the case was removed to federal court, this Court dismissed the complaint without prejudice for failure to state a claim. *Jeanniton v. Costco Wholesale Corp.*, No. 25-CV-22557, 2025 WL 2694768 (S.D. Fla. Sept. 22, 2025). The Court provided Plaintiff until October 6, 2025 to file an amended complaint. *Id.* at *8. Plaintiff did not do so.

Instead, in February 2026, Plaintiff filed the current Complaint in state court. ECF No. [1-2]. In April 2026, Defendant removed the case to federal court. ECF No. [1]. And in April 2026, Defendant filed the instant Motion, arguing that Plaintiff's Complaint should be dismissed for failure to state a claim. ECF No. [9]. Plaintiff filed a Response, ECF No. [12], to which Defendant filed a Reply, ECF No. [13].

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "A facially plausible claim must allege facts that are more than merely possible. . . . But if allegations are indeed more conclusory than factual, then the court does

not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

Further, "[o]n a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) ("We are required to accept the facts as set forth in the plaintiff's complaint as true, and our consideration is limited to those facts contained in the pleadings and attached exhibits.").

## III.  DISCUSSION

### A.  Counts I-II: Race and National Origin Discrimination in Violation of 42 U.S.C. § 1981 and Florida Statutes §§ 760.01 *et seq.*[1]

Claims brought under 42 U.S.C. § 1981 and Florida Statutes §§ 760.01 *et seq.* ("FCRA") can be analyzed together. *See Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 809 (11th Cir. 2015) ("We have explained claims brought under § 1981 and the FCRA need not be analyzed separately from Title VII claims, based on the same conduct."); *see also Gant v. Kash'n Karry Food Stores, Inc.*, 390 F. App'x 943, 945 (11th Cir. 2010) ("Claims under both § 1981 and the FCRA are analyzed under the same framework as Title VII."). In the absence of direct evidence

---

[1] "[T]he line between discrimination based on ancestry or ethnic characteristics, and discrimination based on place or nation of origin, is not a bright one." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (cleaned up). Therefore, "[b]ecause Plaintiff's race discrimination and national origin discrimination claims arise out of the same facts, and because courts have observed that the line between race and national origin is an extremely difficult one to trace, the Court will analyze these claims together." *Carter v. Fla. Auto. Servs. LLC*, No. 8:13-cv-143, 2014 WL 3385048, at *4 n.3 (M.D. Fla. July 10, 2014) (quotation marks and citation omitted).

of discrimination,[2] courts have historically applied the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To make out a *prima facie* case of discrimination under this framework, a plaintiff must show that: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

However, in 2025, the Eleventh Circuit clarified that "*McDonnell Douglas* 'is an evidentiary standard, not a pleading requirement,' so it has no application on a motion to dismiss." *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002)). Indeed, the Eleventh Circuit has stated that at the motion to dismiss stage, a plaintiff "need not allege a prima facie case under *McDonnell Douglas*." *Smith v. Pepsi Bottling Grp.*, No. 24-11597, 2026 WL 937070, at *6 (11th Cir. Apr. 7, 2026) (citing same). Instead, a complaint states a claim for discrimination when it alleges facts which "plausibly suggest that the plaintiff suffered an adverse employment action due to intentional [ ] discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). Put differently, the complaint "must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim," that the employer violated § 1981 or the FCRA. *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1386 (11th Cir. 2010).

In its Motion, Defendant argues that Plaintiff's termination-based claims fail to state a claim, as they "do not include facts permitting an inference that he has a plausible, nonspeculative,

---

[2] Plaintiff does not dispute whether he states a claim based on direct evidence, and therefore, the argument is waived. *Slugocki v. U.S. By & Through Dep't of Labor, Office of Workers' Comp. Programs, Div. of Fed. Emps. Comp.*, 988 F. Supp. 1443, 1447 (S.D. Fla. 1997) ("[Plaintiff] appears to concede as much when he fails to address this argument anywhere in his Response brief."); *Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (finding plaintiff's argument abandoned when he failed to raise it in opposing the defendant's motion to dismiss).

termination-based claim concerning either his race or national origin." ECF No. [9] at 4. Plaintiff's claim is based entirely on his own speculation regarding the motive for his termination. *Id.* at 4–5. Similarly, his non-termination claims are insufficient because (1) some of them were not first presented to the Equal Employment Opportunity Commission ("EEOC") or the Florida Commission on Human Relations ("FCHR") and are therefore not administratively exhausted, (2) none of the alleged acts bear a date, so Plaintiff cannot establish that he timely presented such matters to an administrative agency, (3) all of the relevant allegations are "devoid of specifics" such that Plaintiff has not "plausibly pled that any such matter rose to the level of an adverse employment action," and (4) Plaintiff fails to point to a similarly-situated comparator. *Id.* at 5–7.

Plaintiff responds that he has alleged sufficient facts to support the inference that Defendant took adverse actions against him because of his race and national origin. ECF No. [12] at 3. He alleged that he was accused of theft without cause when non-Haitian employees were not, that he was terminated despite denying the accusation and providing explanation, that he was subject to harsher scrutiny and less favorable task assignments than non-Haitian employees, and that his termination lacked legitimate business justification. *Id*. These allegations are sufficient. *Id*. Moreover, his claims satisfy the exhaustion requirement insofar as they would fall within the scope of a reasonable investigation. *Id.* at 3–4.

Defendant replies that Plaintiff asserts the wrong pleading standard. ECF No. [13] at 2. Moreover, under the correct pleading standard, Plaintiff's non-termination claims fail. *Id.* at 3. He does not plead facts demonstrating that any non-termination matter amounts to an adverse action, nor did he plead specific facts (beyond a conclusory claim of a comparator). *Id*. As to exhaustion, because this is a disparate treatment claim, each alleged adverse action is a discrete employment action that must be pled on a specific date—it cannot merely be swept into claims that were raised

in an EEOC or FHRC charge, even if related. *Id.* at 3–4. Finally, Defendant argues Plaintiff's termination claim must be dismissed as it is based on "conclusory allegations [] insufficient to show that any alleged comparator was, in fact, 'similarly situated,' or engaged in the same conduct but 'received more favorable treatment.'" *Id.* at 4–5.

The Court finds that Plaintiff has sufficiently stated a claim for intentional discrimination. The Court begins with Plaintiff's termination-related allegations. On a high level, Plaintiff alleges that he was terminated, that no meaningful investigation occurred, and that non-Haitian employees were not subjected to termination under comparable circumstances. ECF No. [1] ¶¶ 11–20. In *Ismael*, the Eleventh Circuit provided a non-exhaustive list of circumstances that a court might consider in assessing this type of claim: "'(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual.'" *Ismael*, 161 F.4th at 760 (quoting *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019)).

Plaintiff's allegations satisfy several of these factors. Plaintiff plainly alleges that non-Haitian employees were not terminated under "comparable circumstances"—indeed, Plaintiff lists specific employees of different national origins that held the same job role as him and were not terminated.[3] Moreover, Plaintiff provides allegations tending to support that the stated justification for his termination was pretextual. He indicates that he had proof that he paid for the pizza in the

---

[3] Defendant argues that Plaintiff does not sufficiently allege that these would-be comparators are, in fact, similarly situated or that they "engaged in the same conduct" but were not terminated. ECF No. [9] at 4. It is difficult to imagine what kind of allegation Defendant envisions. Plaintiff's overarching allegation is that he did not do anything to warrant summary termination—that there was no particular "conduct" preceding his termination. So a valid comparator is simply an individual of a different race or national origin who occupied a similar role, had similar performance, and was not summarily terminated without actual cause. Plaintiff's comparators—in particular, Juan Gomez, Yuni Sabate, and Giraldo Pedro—all satisfy this standard, at least at the pleading stage.

form of a receipt, but his managers would not review such "objective evidence." ECF No. [1] ¶ 16. Moreover, his managers did not conduct a meaningful investigation, interview witnesses, or permit Human Resources to review the accusation upon Plaintiff's request. *Id.* ¶¶ 15, 16. Those allegations are sufficient to indicate that the proffered reason for Plaintiff's termination was pretextual.  And Plaintiff provides other "bits and pieces" from which discriminatory intent might be inferred, including the allegation that he had applied for a supervisor position and was more proficient at his job than non-Haitian employees. *Id.* ¶ 18. Such an allegations, if true, tend to make his termination less explicable in the absence of a meaningful investigation. With all of this under consideration, the Court is not prepared to dismiss Plaintiff's claim. Thus, Defendant's Motion is denied as to Counts I and II.

The Court pauses to address Plaintiff's non-termination discrimination claims. The Court identifies three distinct categories of alleged adverse action: (1) "preferential treatment" and "assign[ment of] tasks, including sweeping both inside and outside," ECF No. [1-2] ¶ 19, (2) "scrutiny," *id.* ¶¶ 20, 26, and (3) "discipline," *id.* ¶ 20. Discrimination claims require proof of an "adverse employment action," *Davis v. Legal Servs. Alabama, Inc.*, 19 F.4th 1261, 1265 (11th Cir. 2021) (citation omitted), which is defined as "an ultimate employment decision . . . or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (citation and quotation marks omitted).

The Court agrees with Defendant that those allegations are devoid of specifics, and the Court cannot say that they plausibly rise to the level of an adverse employment action. Indeed, all applicable law indicates that these matters are likely not adverse employment actions. For instance,

as to preferential treatment and differences in task assignments, courts within this circuit have opined that, without more, the requirement that a plaintiff perform unfavorable tasks that are nonetheless within his job description do not constitute an adverse employment action. *See, e.g.,* .” *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244 (11th Cir. 2001) (“In the vast majority of instances, however, we think an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will” not constitute an adverse employment action).

Similarly, as to scrutiny, the Eleventh Circuit has held that “the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely—without more—establish the adverse action necessary to pursue a” discrimination claim. *Id.* at 1242; *see also Harbuck v. Teets*, 152 F. App’x 846, 847–48 (11th Cir. 2005) (holding that employer’s alleged actions, which included subjecting employee to “heightened scrutiny,” did not amount to any adverse employment action).

And unspecified “discipline”—without more—cannot support a discrimination claim. *See, e.g.*, *Rainey v. Holder*, 412 F. App’x 235, 238 (11th Cir. 2011) (noting “when a lower performance evaluation does not result in a ‘loss of pay or benefits or further discipline,’ it does not constitute an adverse employment action” (citation omitted)).

Moreover, as Defendant correctly points out, Plaintiff fails to plead the dates of each event (or even a timeframe for the events), leaving the Court unable to determine that Plaintiff timely filed a charge of discrimination related to these events for purposes of his FCRA claim. *Boatwright v. Fla. Credit Union*, No. 22-12032, 2023 WL 3712289, at *1 (11th Cir. May 30, 2023) (“The plaintiff has the burden of establishing that he filed a timely charge of discrimination.”). As such, standing alone, Plaintiff’s non-termination claims would warrant dismissal. However, insofar as

Count I and II contain sufficient allegations relating to Plaintiff's *termination*, the Court does not find that dismissal of the Counts is warranted.

## B.  Count III: Retaliation in Violation of § 1981

Defendant argues that Plaintiff fails to plead a plausible retaliation claim. ECF No. [9] at 8. First, Plaintiff's alleged complaint cannot constitute protected activity, as it was not "objectively reasonable" for him to believe any of the actions taken constituted unlawful discrimination. *Id.* at 8–9. Moreover, Plaintiff did not allege who the decisionmaker was in any adverse action at issue, nor did he allege that the decisionmaker knew of any protected activity prior to the alleged adverse action occurring. *Id*.

Plaintiff responds that he has adequately alleged statutorily protected activity and an adverse employment action as a result. ECF No. [12] at 4. He reported "improper surveillance and differential treatment directed toward him" to a manager and was terminated within a week. *Id*. Whether his complaint qualifies as protected activity is a factual issue that cannot be resolved on a motion to dismiss, but Plaintiff had a reasonable belief of "unequal and discriminatory treatment." *Id*. Finally, Plaintiff alleged that his complaint was made to "management," "plausibly implying knowledge and participation by decision makers." *Id*.

Defendant replies that temporal proximity is not sufficient, standing alone, to establish causation. ECF No. [13] at 5. Plaintiff fails to allege that anyone engaging in adverse action actually knew of his purported protected activity. *Id.* at 6. That Plaintiff alleged one manager knew of his complaints is insufficient to imply that the manager(s) who terminated him knew of his complaints. *Id.* at 6. Moreover, Plaintiff has not pled any complaint that could qualify as objectively reasonable under governing law. *Id.* at 7.

Section 1981 prohibits retaliation against employees who allege discrimination. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). Applying the

standards used in the Title VII context, *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022), to state a claim for retaliation under § 1981 based on circumstantial evidence, a plaintiff may use the *McDonnell Douglas* approach. *Cooper v. Airbus Americas, Inc.*, No. 25-10378, 2026 WL 852233, at *8 (11th Cir. Mar. 27, 2026). Pursuant to this approach, a plaintiff must show that (1) he "engaged in statutorily protected activity," (2) he "suffered an adverse action," and (3) "the adverse action was causally related to the protected activity." *Patter-son v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citation modified). If the plaintiff does so, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory or non-retaliatory reason for its employment action." *Cooper*, 2026 WL 852233, at *8 (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant does so, then plaintiff must show that defendant's proffered reasons "were not its true reasons, but were a pretext" for retaliation. *Burdine*, 450 U.S. at 253.

However, as with discrimination claims, a plaintiff asserting retaliation claims need not proceed under the *McDonnell Douglas* framework, especially at the motion to dismiss stage. *Ismael*, 161 F.4th at 760 (quoting *Swierkiewicz*, 534 U.S. at 510). Instead, a plaintiff may point to a "convincing mosaic of circumstantial evidence that would allow a jury to infer" retaliation "by the decisionmaker." *Tynes v. Fla. Dep't of Juv. Justice*, 88 F.4th 939, 946 (11th Cir. 2023). Under this approach, the court is to consider the "totality" of the evidence—or, at this stage, allegations—and such evidence or allegations may include suspicious timing, ambiguous statements, systematically better treatment of similarly situated employees, or pretext. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023). In any event, a key element of the retaliation claim is causation. *Gogel*, 967 F.3d at 1135 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

Here, Plaintiff has not satisfied his minimal pleading burden. Plaintiff has not alleged that the relevant decisionmakers knew of his complaints at the time of his termination. Plaintiff alleges that he complained of discrimination on April 10, 2024, but he does not identify to whom he complained. ECF No. [1] at 5. Separately, Plaintiff alleges that he reported being photographed to manager Marlyn Lubin approximately a week before his termination. *Id.* ¶ 21. However, it is not clear who was responsible for his termination. The closest allegation is Plaintiff's statement that managers Eddie Mairona and Perqui de Leon summoned him to the office and accused him of theft, and Eddie Mairona told Plaintiff it was his last day. *Id.* ¶¶ 12, 13. There is simply no allegation that the relevant decisionmaker in Plaintiff's termination was aware of Plaintiff's complaint, and the Eleventh Circuit has repeatedly reaffirmed that knowledge is a prerequisite to establishing causation. *See, e.g.*, *Redd v. United Parcel Serv., Inc.*, 615 F. App'x 598, 606 (11th Cir. 2015) ("To demonstrate a causal connection, the plaintiff must show that [] the decision maker knew of his protected activity . . ." (citation omitted)); *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 998 (11th Cir. 2025) ("In 'any retaliation claim, a plaintiff needs to show (among other things) that the decisionmaker actually knew about the employee's protected expression' at the time they made the decision." (quoting *Martin v. Fin. Asset Mgmt. Sys.*, 959 F.3d 1048, 1053 (11th Cir. 2020))); *Ceus v. City of Tampa*, 803 F. App'x 235, 248 (11th Cir. 2020) ("In order to establish a causal connection, a plaintiff must show that the decision-maker was aware of the protected activity.") (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F. 3d 712, 716 (11th Cir. 2002))). This requirement has remained even post-*Ismael*. *See Joyner v. City of Atlanta*, 170 F.4th 1320, 1334 (11th Cir. 2026); *Santana v. Telemundo Network Grp., LLC*, No. 22-13879, 2026 WL 180272, at *10 (11th Cir. Jan. 22, 2026). This pleading failure is sufficient to dismiss Plaintiff's retaliation claim.

In addition, the Court does not find that Plaintiff has sufficiently pointed to unlawful conduct, or plausibly unlawful conduct, such that his complaint would have constituted protected activity. To establish protected activity for purposes of a retaliation claim, a plaintiff need not show that the complained-of actions were, in fact, unlawful; instead, a plaintiff need only show that "he had a good faith, objectively reasonable belief that the practice was unlawful." *Skelton v. Birmingham Airport Auth.*, No. 20-13982, 2021 WL 4476800, at *4 (11th Cir. Sept. 30, 2021) (citing *Dixon v. Hallmark Cos.*, 627 F.3d 849, 857 (11th Cir. 2010)). The objective reasonableness of a belief is "measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999) (citations omitted).

But here, the actions pointed to by Plaintiff—namely, (1) "preferential treatment" and "assign[ment of] tasks, including sweeping both inside and outside," ECF No. [1-2] ¶ 19, (2) "scrutiny," *id.* ¶¶ 20, 26, and (3) "discipline," *id.* ¶ 20—do not constitute adverse employment actions and therefore could not support a reasonable belief that a discrimination claim exists. As the Court noted above, to constitute an adverse employment action, an act must have "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239. And the Court previously explained that, without more, preferential treatment, differences in task assignments, scrutiny, and unspecified "discipline" are not adverse employment actions.

Because the purported acts of discrimination underpinning Plaintiff's complaint were not plausibly unlawful, the Court cannot say that his belief was objectively reasonable. Thus, his complaints were not protected activity, so he cannot state a claim for retaliation. The Motion is therefore granted as to Count III.

### C. Count IV: Slander

Defendant argues that Plaintiff fails to state a claim for slander. ECF No. [9] at 10. First, Plaintiff has not alleged that the slanderous statements were made to individuals who would not

count as part of the corporation itself. *Id.* at 11. Second, Plaintiff "has not pled any facts that would permit an inference that, even if a slanderous statement was published, [Defendant] could be held liable for it." *Id.*

Plaintiff responds, first, that "Defendant's assertion that intra-corporate communication cannot constitute publication is premature and fact-dependent." ECF No. [12] at 5. Whether the statements were made to managers or other employees cannot be settled at the pleading stage, and Plaintiff's allegations plausibly include non-managerial employees. *Id.* Moreover, Plaintiff has stated a plausible claim for corporate liability, as Plaintiff has alleged that the statements were made by managers in the workplace during the course of employment and in connection with accusations of workplace theft. *Id.* at 6.

Defendant replies, first, that the Complaint did not allege that the "third parties" to whom the defamatory statements were made were not managers. ECF No. [13] at 8. Second, Plaintiff's Complaint does not include any allegation—conclusory or otherwise—that any manager was acting within the course and scope of his employment or benefiting Defendant in making the defamatory statements. *Id.* at 9.

Under Florida law, the elements of defamation are as follows: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008). "Words are defamatory under Florida law when 'they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession.'" *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citation and quotation marks omitted)). Essential to a

defamation claim is that "the alleged slanderous . . . statement be made or published to some third person." *Mennella v. Am. Airlines, Inc.*, No. 17-21915-CIV, 2019 WL 1429636, at \*4 (S.D. Fla. Mar. 29, 2019), *aff'd*, 824 F. App'x 696 (11th Cir. 2020).

Importantly, intra-corporate communications are generally not actionable for defamation based on a lack of publication. *Advantage Personnel Agency, Inc. v. Hicks & Grayson, Inc.*, 447 So. 2d 330, 331 (Fla. 3d DCA 1984); *see also Hoch v. Loren*, 273 So. 3d 56, 58 (Fla. 4th DCA 2019) ("Florida courts have found no publication where a corporation is sued for defamation and the defamatory statement was made by one managerial employee of the corporation to another."). That is, when a corporation is accused of defamation, "statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication." *Geddes*, 960 So. 2d at 833. The Eleventh Circuit has permitted application of this intra-corporate communications exception at the pleadings stage. *Clowdus v. Am. Airlines, Inc.*, No. 1:21-CV-23155-KMM, 2022 WL 3681961, at \*4 (S.D. Fla. Apr. 29, 2022), *aff'd*, No. 22-14053, 2023 WL 5011731 (11th Cir. Aug. 7, 2023).

Here, the Court finds that Plaintiff has not met his burden of alleging publication. The Complaint states only as follows: "The false accusation was communicated to third parties within the workplace." ECF No. [1] ¶ 50. Plaintiff does not specify whether the statements were made to managerial or non-managerial employees. The Court must draw reasonable inferences in Plaintiff's favor, but the Court may not assume that Plaintiff can prove facts that were simply not alleged. *Quality Foods de Centro Am., S.A. v. Latin AM. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983). And that is what Plaintiff asks the Court to do—to assume that he can prove that the statements were made to non-managerial individuals, notwithstanding that Plaintiff never alleged as much. *Monaco Exch., Inc. v. SJ Int'l Brokers, LLC*, No. 12-23447-CIV, 2012 WL

12868294, at \*2 (S.D. Fla. Nov. 28, 2012) (holding that, on a motion to dismiss, a court should not "assume facts not pled in the complaint.").

Moreover, Plaintiff has not stated a claim for corporate liability. To find a defendant corporation liable for defamation by its employee, a plaintiff must show that the employee was acting at the time within the scope of his employment and used the defamatory statements in the actual performance of his duties. *Baker v. Atl. Coast Line R.R. Co.*, 192 So. 606 (Fla. 1939); *Hooper–Holmes Bureau v. Bunn*, 161 F.2d 102, 104 (5th Cir. 1947). "An act of a servant is not within the scope of employment if it is done without the intention to perform it as a part of or incident to a service on account of which he is employed." *Tallahassee Furniture Co. v. Harrison*, 583 So. 2d 744, 758 (Fla. 1st DCA 1991) (citing Restatement (Second) of Agency § 235 (1958)). Here, Plaintiff has not alleged when, by whom, to whom, or how the alleged defamatory statements were made. The Court cannot merely assume that the statements were made by management while in the course of their employment or in service of their employment. In this regard, Plaintiff plainly fails to state a claim for Defendant's liability.

Thus, the Motion is granted as to Count IV and Count IV is dismissed.

### D.  Leave to Amend

Plaintiff requests that, if the Court find any pleading deficiencies, he be granted leave to amend. ECF No. [12] at 7–8. Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a complaint should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

Moreover, a request to amend contained in a response to a motion to dismiss is not properly before the Court. The Eleventh Circuit has held that a request for leave to amend contained in a response in opposition to a motion to dismiss "possesse[s] no legal effect." *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). The court is "free to dismiss [plaintiff's] complaint with prejudice" on that basis alone without determining whether further amendment is futile, unless dismissal is based on shotgun pleading grounds. *See Pop v. LuliFama.com, LLC*, 145 F.4th 1284, 1297–98 (11th Cir. 2025). Here, Plaintiff never filed a motion requesting leave to amend, merely requesting that the Court grant it in his Response. In light of Plaintiff's failure to properly request leave to amend, the Court will not provide an opportunity to amend.[4]

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [9]**, is **GRANTED IN PART AND DENIED IN PART**.

   a.   The Motion is **DENIED** as to Counts I and II.

   b.   Counts III and IV are **DISMISSED**.

2. Defendant shall file its Answer to the Complaint by **August 17, 2026**.

---

[4] The Court notes that, functionally, this is already Plaintiff's "second bite at the apple." Plaintiff's prior complaint, based on entirely the same factual grounds, was dismissed by this Court in 2025, with leave to amend. *Jeanniton v. Costco Wholesale Corp.*, No. 25-CV-22557, 2025 WL 2694768 (S.D. Fla. Sept. 22, 2025). Plaintiff did not take the Court's opportunity to amend, choosing instead to file a new case with the benefit of the Court's rulings on the prior complaint.

Case No. 26-cv-22359-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 3, 2026.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

18